*1118
 

 OPINION AND ORDER
 

 WILLIAM C. CONNER, Senior District Judge.
 

 Following trial of the above-captioned case, the jury returned a verdict for plaintiff. Defendants Anthony M. Mosca (“Mosca”), former Commissioner of Westchester County Department of Public Safety (the “Department” or the “Westchester County Department”); Ernest J. Colaneri (“Colaneri”), present Commissioner of the Department; and the County of Westchester (the “County”) have moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), or for a new trial pursuant to Fed.R.Civ.P. 59, or for a remittitur. Plaintiff has applied for an award of attorney’s fees and costs pursuant to 42 U.S.C. § 1988. For reasons discussed below, we deny defendants’ motion
 
 [1]
 
 for judgment as a matter of law. We grant their motion for a new trial, solely on the issue of damages, unless plaintiff accepts a remittitur. Plaintiffs application for attorney’s fees and costs is granted as modified below.
 

 BACKGROUND
 

 Plaintiff, a police officer employed by the County, commenced this lawsuit under 42 U.S.C. § 1983 claiming,
 
 inter alia,
 
 that defendants discriminated against her because of her gender in violation of her right to equal protection under the Fourteenth Amendment. Plaintiffs claims against defendant Mosca can be traced to the time that she was employed as a police officer by the Mount Vernon Police Department prior to joining the Westchester County Department. While plaintiff was a police officer at Mount Vernon, defendant Mosca was appointed Commissioner of that police department. Plaintiff left Mount Vernon in 1984, partly in order to distance herself from Mosca, and accepted employment with the Westchester County Department. Soon thereafter, Mos-ca became the Commissioner of the Westchester County Department and once again assumed a position of authority over plaintiff. According to plaintiff, the discriminatory practices committed by Mosca began at the time he became Commissioner of the Mount Vernon Police Department in 1981 and ran continuously through his tenure as Commissioner of the Westchester County Department. Mosca has since retired and was succeeded by defendant Colaneri, who presently holds that post. Plaintiff, currently a Lieutenant in the Department, alleged that (1) Mosca discriminated against her continuously from the time that she and Mosca were employed by Mount Vernon through the time that they served in the Westchester County Department, (2) Colaneri discriminated against her based on her gender during the time that she was employed by the County, and (3) the County caused discrimination to be committed against her by having a policy and practice of discrimination based on gender.
 

 Following trial, the jury found for plaintiff, and awarded compensatory damages of $216,000 against the County, $1 against Colaneri, and $50,000 against Mosca, and punitive damages of $25,000 against Colaneri and $250,000 against Mosca.
 

 DISCUSSION
 

 On the instant motion, defendants seek three types of relief: judgment as a matter of law under Rule 50(b), a new trial under Rule 59, or a remittitur. The court may grant a motion for judgment as a matter of law where “there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue____” Fed. R.Civ.P. 50. “The standard for granting a motion for judgment [as a matter of law] pursuant to Rule 50(b) is whether the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants’ favor.”
 
 Jund v. Town of Hempstead,
 
 941 F.2d 1271, 1290 (2d Cir.1991) (internal quotations omitted). A judgment as a matter of law is proper if “(1) there is such a complete absence of evidence supporting the verdict that the jury’s findings could only have been the result of sheer
 
 *1119
 
 surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.”
 
 Id.
 
 In other words, judgment as a matter of law is reserved for the rare occasions when there is a complete absence of evidence to support the jury’s verdict or the evidence is so overwhelming that a reasonable person could only have reached the opposite result.
 
 Sorlucco v. New York City Police Dept.,
 
 971 F.2d 864, 871 (2d Cir.1992).
 

 The standard for granting a motion for a new trial is less stringent.
 
 Katara v. D.E. Jones Commodities, Inc.,
 
 835 F.2d 966, 970 (2d Cir.1987). “The district court ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.”
 
 Smith v. Lightning Bolt Prods., Inc.,
 
 861 F.2d 363, 370 (2d Cir. 1988);
 
 see also Sorlucco,
 
 971 F.2d at 875.
 

 Defendants’ third alternative request for relief is for a remittitur, which is “the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial.”
 
 Earl v. Bouchard Transp. Co.,
 
 917 F.2d 1320, 1328 (2d Cir.1990). On a motion for a remittitur, the standard is “whether the award is so high as to shock the judicial conscience and constitute a denial of justice.”
 
 Ismail v. Cohen,
 
 899 F.2d 183, 186 (2d Cir.1990). This standard applies to damage awards, whether compensatory or punitive.
 
 Id.
 
 If the district court elects to order a remittitur, it “should remit the jury’s award only to the maximum amount that would be upheld by the district court as not excessive.”
 
 Earl,
 
 917 F.2d at 1330.
 

 I. Judgment as a Matter of Law
 

 Defendants seek judgment as a matter of law on the ground that there is no evidentiary basis on which a reasonable jury could conclude that (1) defendants violated plaintiffs right to equal protection, (2) plaintiff suffered any compensable injury, or (3) defendants Mosca and Colaneri acted with sufficient recklessness to warrant an award of punitive damages.
 
 [2]
 

 A. Liability
 

 Judgment as a matter of law is not warranted on the issue of liability because there is evidence to support the jury’s finding that defendants violated plaintiffs constitutional right to equal protection. The evidence adduced at trial indicated that Mosca held a certain animus towards women in the police force. For example, plaintiff testified that he called her a “f_cking c_t,” that he stated he was not “afraid of this women liberation s_t, or liberation bulls_t,” and that he commented that he “never really believed in women being cops or women being in police work.” Tr. 1428-1429. Plaintiff further testified that, during the seven years she served on the Mount Vernon Police Department, she was never taken off walking posts and placed in ear posts for permanent assignments, even though male officers junior to her had been taken off walking posts and received permanent assignments. Tr. 1445-1446. She testified that she had complained about her walking post assignments to Mosca when he was Commissioner of the Mount Vernon Police Department to no avail.
 
 Id.
 

 Plaintiff further testified that after leaving the Mount Vernon Police Department and joining the Westchester County Department,
 
 *1120
 
 she was relegated to the sex crimes unit and prevented from working in other units within the Department.
 
 See
 
 Tr. 1477, 1499-1502. As a detective, she was trained in fingerprinting by practicing on dead bodies in the morgue, rather than on live bodies. Tr. 1765-1768., Plaintiff claimed that, while employed by the County, her name was unfairly removed from a promotion list for sergeant. Tr. 1509. When plaintiff eventually was promoted to sergeant, over four years after joining the Department, plaintiff still had not received her uniform, and had to wear a dress when she was sworn in, and during the first week of her training. Tr. 1513-1514, 1577. The County’s failure to provide plaintiff with a police uniform for over four years also prevented plaintiff from participating in official overtime assignments. Tr. 1477. Also, plaintiff testified that Commissioner Mosca, and later Commissioner Colaneri, ignored her complaints of sexual harassment by others in the Department.
 
 See, e.g.,
 
 Tr. 1531-1533.
 

 There is also evidence in the record that plaintiff was singled-out in the Department because she is a woman. For example, plaintiffs initial request to work “sweep detail” at the Department — a program for detectives to go out and pick up people for whom warrants were outstanding — was denied. Tr. 1478-1480. Her rejection was accompanied by the statement “[n]o girls allowed.” Tr. 1480. Also, in 1990 Colaneri (then-Deputy Commissioner of the Department) initiated an internal investigation against her for failing to salute him, even though male subordinates were not reprimanded when they failed to salute him.
 
 See
 
 Tr. 1489-1496, 1530, 1540-1542. Finally, plaintiff testified that she alone was prohibited from eating in the radio room at police headquarters in the Department. See Tr. 1524-1525, 1873. We believe that the evidence adduced at trial supports a finding by the jury that defendants discriminated against plaintiff because she is a female police officer. We therefore deny defendants’ motion for judgment as a matter of law on the issue of liability.
 

 B. Compensatory Damages
 

 There is also evidence to support the jury’s finding that plaintiff suffered emotional harm due to defendants’ conduct. For example, plaintiff testified that she was “angry” and “humiliated” and “very upset” after being called a “f_cking c_t” and being told by Mosca not to “give any of this women’s liberation s_t.” Tr. 1428-1429. She further testified that she was “very angry and very humiliated” when she was ordered to have a desk sergeant put up her hair because she was unable to do so herself due to a broken hand. Tr. 1462-1463. Furthermore, while at Mount Vernon, the evidence supported a finding that, by order of Mosca, plaintiff was assigned the worst post available as a matter of practice.
 
 See
 
 Tr. 1467. In addition, plaintiff testified that in 1992, while employed by the County, her request for personal time off was cancelled at the last minute after being previously approved.
 
 See
 
 Tr. 1558. She was also unfairly deprived of one day of bereavement leave after the death of her grandfather. See Tr. 1566-1568, 1654-1660. Even after plaintiff became a lieutenant, she was “humiliated” and felt “degraded” by assignments to Yonkers Social Services, a position that had always been a sergeant’s position. Tr. 1509.
 

 Plaintiff did not seek medical or psychiatric treatment, but did seek, and continued to seek as of the time of trial, counseling to discuss her emotional distress.
 
 See
 
 Tr. 1871, 1930-1931. Based on the evidence adduced at trial, a reasonable fact finder could conclude that plaintiff suffered mental anguish and humiliation due to defendants’ violation of her equal protection right guaranteed under the Constitution.
 

 In sum, the evidence supports a finding that Colaneri and Mosca treated plaintiff differently because she is a woman and that they and the County caused injury to plaintiff by permitting discriminatory practices to be committed. Therefore, judgment as a matter of law is not warranted on the issue of compensatory damages.
 

 C. Punitive Damages
 

 Punitive damages may be awarded in a section 1983 case “when the defendant’s conduct is shown to be motivated by evil motive or intent, or when it involves reckless
 
 *1121
 
 or callous indifference to the federally protected rights of others.”
 
 Smith v. Wade,
 
 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Viewed in the light most favorable to plaintiff without considering credibility or weight,
 
 Jund,
 
 941 F.2d at 1290, the evidence adduced at trial supports a finding that Colaneri and Mosca acted with reckless or callous indifference to plaintiffs right to equal protection. The jury, in response to a question on the special verdict form, found that the conduct of defendants Colaneri and Mosca was sufficiently wanton, reckless or callous that punitive damages should be awarded. Under these circumstances, we cannot conclude that the evidence permitted a conclusion only in defendants’ favor on this issue. Hence, defendants Colaneri and Mos-ca are not entitled to judgment as a matter of law that punitive damages are unwarranted in this case.
 

 II. New Trial or Remittitur
 

 Defendants also seek a new trial on the issue of damages, or, in the alternative, a remittitur of the damages award, on the ground that the amount awarded by the jury is excessive.
 

 A. Compensatory Damages
 

 “While a jury has broad discretion in measuring damages, it may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket.”
 
 Scala v. Moore McCormack Lines, Inc.,
 
 985 F.2d 680, 684 (2d Cir.1993). We conclude that the compensatory damage award in this case ($266,001) is so excessive that it shocks the judicial conscious. The amount of compensatory damages awarded by the jury far exceeds plaintiffs actual damages, and to uphold such an award would be a miscarriage of justice. The overcompensation would result in the payment by defendants of exemplary damages, and receipt by plaintiff of a windfall.
 

 Plaintiffs sole claim for compensatory damages rested on her claim for emotional suffering. Although there is evidence to support the jury’s finding that plaintiff was humiliated and embarrassed, and therefore suffered emotional and mental distress, an award of $266,001 clearly exceeds plaintiffs actual damages. We conclude that a compensatory damage award greater than $100,-001 would be excessive, and therefore grant defendants’ motion for a new trial on the issue of compensatory damages unless plaintiff agrees to remit the amount of compensatory damages to $100,001.
 

 As for apportionment of liability among defendants for these damages, we conclude that the County and Mosca contributed in roughly equal shares, with Colaneri contributing nominally to plaintiffs actual damages. Therefore, if plaintiff accepts remittitur, we apportion $50,000 to the County and $50,000 to Mosca, and allow the $1 awarded against Colaneri to stand.
 

 B. Punitive Damages
 

 The purpose of punitive damage awards is to punish the defendant and to deter the defendant and others from engaging in similar conduct in the future.
 
 See Smith,
 
 461 U.S. at 54, 103 S.Ct. at 1639. The decision to award punitive damages is a discretionary moral judgment made by the jury.
 
 See id.
 
 at 52, 103 S.Ct. at 1638. “Nevertheless, the amount of punitive damages should not be greater than the amount reasonably necessary to fulfill the purposes of punishment and deterrence or the punitive damage award becomes, in part, a windfall to the individual litigant.”
 
 Niemann v. Whalen,
 
 928 F.Supp. 296, 300 (S.D.N.Y.1996) (Conner, J.) (citing
 
 Aldrich v. Thomson McKinnon Securities, Inc.,
 
 756 F.2d 243, 249 (2d Cir. 1985)).
 

 We believe that the jury’s award of $25,000 in punitive damages against Colaneri is not so great as to shock the judicial conscience. Nor do we believe the award to constitute a windfall for plaintiff. Therefore, we will not disturb the jury’s award of punitive damages as against Colaneri.
 

 The jury’s award of $250,000 in punitive damages against Mosca, however, is so great as to “shock the judicial conscience and to constitute a denial of justice,”
 
 Ismail,
 
 899 F.2d at 186, as well as a windfall for plaintiff,
 
 Aldrich,
 
 756 F.2d at 249. This amount is well in excess of the figure reasonably neces
 
 *1122
 
 sary to punish Mosca and to deter him and others from similar conduct. Therefore, we will order a new trial on the issue of punitive damages against Mosca unless plaintiff agrees to accept a remittitur.
 

 While we consider Mosca’s conduct in this case to be a serious breach of plaintiffs Constitutional right to equal protection, the punitive damage award against him far surpasses the amount necessary to punish him for his conduct and to deter him and others from engaging in similar conduct in the future. Indeed, because Mosca has retired from the police force, there is little or no chance that he will be again in a position of authority over a police officer such as plaintiff.
 

 We believe that an award of $100,000 in punitive damages against Mosca would adequately serve the goals of punishment and deterrence. This figure represents the maximum amount of punitive damages that we would uphold as not excessive.
 

 It should be noted that counsel for neither Mosca nor Colaneri requested a hearing on defendants’ financial condition. Defendants therefore cannot complain that a $100,000 punitive damage award against Mosca and a $25,000 punitive damage award against Colaneri violate due process. “[I]t is the defendants’] burden to show that [their] financial circumstances warrant a limitation of the [punitive damages] award.”
 
 Lightning Bolt,
 
 861 F.2d at 373. Defendants failed to request a special hearing on the ground that they did not believe that punitive damages were warranted. Counsels’ wishful thinking is no excuse for what appears to have been an ill-advised gamble, and Mosca and Colaneri cannot now complain that punitive damages of $100,000 and $25,000, respectively, are excessive.
 

 Plaintiff argues that defendants’ failure to request a hearing on Mosca’s financial condition warrants denial of his motion for a new trial on, or remittitur of, punitive damages. However, we take judicial notice of the fact that a commissioner of a county police department receives only limited financial compensation for his or her services. Based on representation of counsel at a post-trial conference, we believe that defendant Mosca is neither extremely wealthy nor destitute. To uphold a punitive damage award of $250,000 against Mosca on the ground that the court lacks any guidance regarding his financial condition would be draconian and possibly violative of due process. In any case, we conclude that that amount far exceeds the amount necessary to punish Mosca and to deter him and others from future similar conduct.
 

 Therefore, we will grant defendants’ motion for a new trial on the issue of compensatory and punitive damages unless plaintiff consents to remit the compensatory damage award to $50,000 against the County, and the punitive damage award to $100,000 against Mosca. If plaintiff accepts remittitur, she will receive a judgment totalling $225,001 in compensatory and punitive damages against defendants.
 

 III. Attorney’s Fees and Costs
 

 Section 1988 of Title 42 provides that, in a section 1983 action, “the court, in its discretion, may allow the prevailing party ... a reasonable attorney’s fee as part of the costs.” A prevailing plaintiff “should ordinarily recover an attorney’s fee unless special circumstances would render such an award unjust.”
 
 Hensley v. Eckerhart,
 
 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983).
 
 Hensley
 
 instructs that the starting point for determining a reasonable attorney’s fee is the “lodestar” amount, or the product of the hours reasonable expended multiplied by a reasonable hourly rate. A party advocating a departure from the lodestar calculation then bears the burden of establishing that an adjustment is necessary to reach a reasonable fee.
 
 United States Football League v. National Football League,
 
 887 F.2d 408, 413 (2d Cir.1989),
 
 cert. denied,
 
 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). As required by
 
 Hensley,
 
 plaintiff has submitted schedules that detail the amount of time spent by numerous attorneys on various aspects of this case and the amount charged per hour. Jonathan Lovett, plaintiff’s trial attorney, seeks an upward adjustment in his hourly fee from $250 per hour to $300 per hour. Defendants, on the other
 
 *1123
 
 hand, argue that a downward adjustment of fees is warranted because the hourly rate sought by Mr. Lovett and his associate, Kim Berg, and the amount of time spent by all counsel for plaintiff are not reasonable.
 

 A. Hourly Rates
 

 We conclude that the complexity of this case and the degree of success achieved do not warrant an upward adjustment from Mr. Lovett’s regular hourly fee. Therefore, we calculate the award of fees to which plaintiff is entitled based on an hourly rate for Mr. Lovett of $250. Defendants’ contention that Mr. Lovett’s fee should be reduced to $200 per hour is without merit.
 

 In addition, we disagree with defendants that a rate of $125 per hour charged for Ms. Berg, an associate of Mr. Lovett’s firm, is excessive. Despite Ms. Berg’s recent admission to the bar, she has extensive experience in civil rights litigation for a first year associate, and we conclude that a rate of $125 per hour is reasonable.
 

 Defendants contend summarily that the hourly rate charged by George J. Calganini, plaintiff’s attorney prior to trial in this case, is excessive.
 
 [3]
 
 We find no merit in this conelusory assertion. Finally, defendants do not seriously challenge the hourly rate charged by Frank Prete, Jr., an attorney who assisted Mr. Calganini prior to Mr. Lovett’s appearance.
 

 Therefore, we apply the following hourly rates for work performed by the following attorneys:
 

 Mr. Lovett $250 per hour
 

 Ms. Berg $125 per hour
 

 Mr. Calganini $200 per hour ($225 per hour after 9/1/93)
 

 Mr. Prete $150 per hour
 

 B. Reasonable amount of time spent
 

 We reject defendants’ assertion that Mr. Calganini spent an unreasonable amount of time litigating this case. However, defendants’ contention that they should not be required to pay for the amount of time that it took Mr. Lovett to familiarize himself with this case merits some discussion.
 

 Plaintiff originally had retained Mr. Calganini in this case, and, after Mr. Calganini argued summary judgment motions to the district court and an appeal to the Second Circuit, Mr. Lovett was retained for trial. In preparation for trial, Mr. Lovett spent approximately forty-five hours familiarizing himself with the case, some of which was duplicative of the work that had already been conducted by Mr. Calganini. Plaintiff should not recover full fees for this duplicative work, since it was her decision to replace counsel during the course of this litigation. We recognize that even if Mr. Lovett had been involved in this case from its inception, it would have been reasonable for him to spend some time reviewing the files in preparation for trial. Thus, in order to strike an appropriate balance, we reduce the number of hours reasonably charged by Mr. Lovett by twenty hours.
 

 Therefore, we conclude that the following number of hours were reasonably spent by the following attorneys in litigating this action:
 

 Mr. Lovett 269.0 hours
 
 [4]
 

 Ms. Berg 55.5 hours
 

 Mr. Calganini 244.15 hours
 

 Mr. Prete 45.3 hours
 

 C. Adjustments
 

 Based on the reasonable number of hours spent and hourly rates charged, we conclude that plaintiff is entitled to the following attorney’s fee:
 

 Mr. Lovett $ 67,250
 

 Ms. Berg 6,937.50
 

 Mr. Calganini 53,570
 

 Mr. Prete 6.795
 

 Total $134,552.50
 

 In addition, we award $5,677.02 in costs,
 
 [5]
 
 which represents expenses plaintiff has proved she incurred in this action (exclusive
 
 *1124
 
 of the $1,020.10 incurred in the surveillance of defendant Mosca during the weekend pri- or to commencement of trial
 
 [6]
 
 ). Neither party has convinced us that any further adjustment is warranted. We therefore conclude that plaintiff is entitled to $140,229.52 in attorney’s fees, including $5,677.02 in costs.
 

 CONCLUSION
 

 For the foregoing reasons, defendants’ motion for judgment as a matter of law is denied. Defendants’ motion for a new trial on the issue of compensatory and punitive damages is granted unless plaintiff accepts a remittitur reducing the judgment as follows:
 

 Compensatory Damages Punitive Damages
 

 County
 
 $50,000
 

 [7]
 

 Mosca $50,000
 
 [8]
 
 $100,000
 
 [9]
 

 Colaneri $ 1
 
 [10]
 
 $ 25,000
 
 [11]
 

 If plaintiff accepts remittitur, she shall send a written acceptance to the court by September 25,1996.
 

 In any case, we amend the judgment in the record, dated June 12, 1996, with the attached amended order of judgment by striking all references to pre-judgment interest, to which plaintiff is not entitled, and by delineating the amount of compensatory damages and punitive damages awarded as follows:
 

 County compensatory damages of $216,000
 

 Mosca compensatory damages of $50,000 and punitive damages of $250,000
 

 Colaneri compensatory damages of $1 and punitive damages of $25,000
 

 Plaintiffs motion for attorney’s fees and costs is granted, as modified above, in the amount of $140,229.52, including $5,677.02 in costs.
 

 SO ORDERED.
 

 [1]
 

 . Although defendant Mosca filed submissions separately, he takes the same position and furthers the same arguments as the other defendants, and we therefore address all defendants’ motions as one.
 

 [2]
 

 . We reject plaintiff’s contention that the court lacks jurisdiction to consider defendant Mosca’s motion as untimely. Plaintiff argues that (1) Mosca’s papers were served after the expiration of the ten-day window under Rules 50 and 59, and (2) no notice of motion was served.
 
 See Rodick v. City of Schenectady,
 
 1 F.3d 1341,
 
 1346
 
 (2d Cir. 1993). We agree with plaintiff that a court may not grant an extension of time beyond the ten days allotted in which to file a motion under Rules 50 and 59.
 
 See id.
 
 However, such extension was neither requested nor granted in this instance. Although plaintiff may have received copies of Mosca’s motion papers after the expiration of the ten-day period, even prior to entry of judgment in this case, defendants sought permission at a post-trial conference to make the instant motion. Mosca's motion was therefore timely.
 
 See Meriwether v. Coughlin,
 
 879 F.2d 1037,
 
 1041
 
 (2d Cir.1989) ("[Oral] statement ‘I would ... like to ... note that defendants wish to move' was a motion [under Rule 50 and not a request for an extension of time in which to file a motion.]”);
 
 cf. U.S. East Telecommunications, Inc. v. U.S. West Information Systems, Inc.,
 
 15 F.3d 261, 262 (2d Cir. 1994).
 

 [3]
 

 . Mr. Calganini’s hourly rate was $200 per hour prior to September 1, 1993, and $225 per hour thereafter.
 

 [4]
 

 . This figure includes 25.4 hours submitted in Mr. Lovett’s Supplemental Affirmation in Support of Motion for an Award of Attorney’s Fees, but, for reasons discussed above, excludes 20.0 hours from the 263.6 hours submitted in Lovett’s Affirmation in Support of Motion for Award of Attorney's Fees.
 

 [5]
 

 . $5,197.93 from Mr. Lovett, and $479.09 from Mr. Calganini.
 

 [6]
 

 . Due to Mosca's health condition, the court granted a one week adjournment of trial. Apparently, plaintiff believed that Mosca may have been trying to delay trial, and thus hired an investigator to observe Mosca during the weekend prior to the adjourned trial date. In light of the fact that the court had decided upon careful consideration that Mosca was indeed unfit to attend trial, plaintiff may not recover for expenses incurred for his surveillance.
 

 [7]
 

 . Reduction from $216,000.
 

 [8]
 

 . No reduction.
 

 [9]
 

 . Reduction from $250,000.
 

 [10]
 

 . No reduction.
 

 [11]
 

 . No reduction.