Gregory and Shannon BROOME,
Plaintiffs–Counterclaim
Defendants,

v.

Nicholas BIONDI, Richard Appleby, Katherine Cundey, Michael Silverman, Michael Weiner, and Beekman Hill House Apt. Corporation, Defendants–Counterclaim Plaintiffs.

Nicholas BIONDI, Richard Appleby, Katherine Cundey, Michael Silverman, Lawrence Weiner, and Beekman Hill House Apt. Corporation, Third–Party Plaintiffs,

v.

Simone DEMOU, Third–Party Defendant.

Nicholas BIONDI, Plaintiff,

v.

Simone DEMOU, Defendant.

Nos. 96 Civ. 0805(RLC),
96 Civ. 2262(RLC).

United States District Court,
S.D. New York.

Nov. 4, 1997.

**232**

Skadden, Arps, Slate, Meagher & Flom LLP, New York City (Scott D. Musoff, Jo-seph N. Sacca, Mark W. Smith, of counsel), for Plaintiffs.

Epstein, Becker & Green, P.C., New York City (Ronald M. Green, Patricia A. Murphy, Claudia M. Cohen, of counsel), for Defendants.

Latham & Watkins, New York City (Michael K. Hertz, John T. Brennan, Eric A. Richardson, of counsel), for Third–Party Defendant in No. 96 Civ. 0805, Defendant in No. 96 Civ. 2262.

## OPINION

ROBERT L. CARTER, District Judge.

The plaintiffs in Case 96 Civ. 0805(RLC) move pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 3613 for an order awarding them attorneys' fees and expenses from December, 1995 through May 31, 1997 totaling $490,-892.89; and third-party defendant in Case 96 Civ. 0805(RLC), who is also the defendant in Case 96 Civ. 2262(RLC), moves pursuant to 42 U.S.C. § 3613 to recover attorneys' fees and expenses from March 26, 1996 through May 6, 1997 totaling $459,067.61.

### I. Background

, The history and background facts of this controversy are set forth in considerable detail in a prior opinion reported at 1997 WL 83295 (S.D.N.Y. February 10, 1997) (Carter, J.) with which familiarity is assumed. Accordingly, only a brief summary of the facts is necessary to aid understanding of the remaining issues in this case. In February 1996, plaintiffs Gregory and Shannon Broome, filed suit under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.;* 42 U.S.C. § 1981, 42 U.S.C. § 1982, and the New York Human Rights Law, N.Y.Exec.Law § 296(5), alleging racially discriminatory rejection of their application to sublet an apartment.[1]

Defendants[2] filed a counterclaim against the plaintiffs, and sued Simone Demou, the owner of the apartment that plaintiffs had

---

1. Plaintiffs also filed suit alleging intentional infliction of emotional distress under common law.

2. Plaintiffs are suing the Beekman Hill House Apartment Corporation and each of Beekman's Board of Directors in their individual and official capacity. Board members are Nicholas Biondi, Richard Appleby, Katherine Cundey, Michael Silverman, and Lawrence Weiner.

agreed to sublet. In addition, Demou filed a counter-claim against defendants, all on various grounds over which we need not linger at this time.[3]

On May 6, 1997, following a seven day trial, the jury found defendants Biondi, Appleby, Cundey, Silverman, Weiner, and Beekman Hill House Apartment Corporation liable to plaintiffs for racial discrimination, and liable to third-party defendant for unlawful retaliation, breach of fiduciary duty, breach of contract, and tortious interference with the performance of a contract.[4] The jury awarded plaintiffs $230,000 in compensatory damages and $410,000 [5] in punitive damages. The jury also awarded third-party defendant compensatory and punitive damages totalling $164,000.[6]

## II. Attorneys' Fees

Plaintiffs and third party defendant, as prevailing parties, are entitled to attorneys' fees to be assessed against the opposing parties. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1982).[7] Defendants do not contest such entitlement here, but contend that the amounts claimed are unreasonable and excessive.[8]

### A. Hours

#### 1. Time spent on unsuccessful claims

Defendants argue that plaintiffs should not recover for time spent on their unsuccessful claim for intentional infliction of emotional distress or on their contemplated, but never pursued, claim of promissory estoppel. Ordinarily, fees may not be recovered for distinct, unsuccessful claims. *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933. However, the fact that a plaintiff does not prevail on all claims advanced does not mandate a reduction of a fee award to account for time expended on the unsuccessful claims. In many cases,

> the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole making it difficult to divide the hours expended on a claim-by-claim basis.

**3.** Defendants counter-claimed against plaintiffs for defamation and filed a third-party injurious falsehood claim against Simone Demou. Nicholas Biondi sued Demou for defamation individually. Third-party defendant Demou's counter-claims against defendants allege unlawful retaliation under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3617; the New York Human Rights Law, N.Y.Exec.Law §§ 296(5) and 296(7); and the New York City Administrative Code §§ 8–107(5) and 8–107(7) (the New York City Human Rights Law). Third-party defendant also asserted counterclaims against defendants for breach of contract, breach of fiduciary duty, and tortious interference with the performance of a contract.

**4.** The court granted a directed verdict in favor of plaintiffs and third-party defendant on defendants' defamation counterclaim and third-party action, respectively. The defendants were found not liable on plaintiffs' state law claim for intentional infliction of emotional distress and the court dismissed third-party defendant's city claim for improper service.

**5.** The jury awarded $150,000 in punitive damages against Beekman Hill House Apartment Corporation; $125,000 against Biondi; $60,000 against Appleby; $25,000 against Silverman; $25,000 against Weiner; and $25,000 against Cundey.

**6.** For unlawful retaliation, third-party defendant received $100,000 in compensatory damages, $27,000 in punitive damages from Biondi, $5,000 from Appleby, $5,000 from Cundey, $5,000 from Silverman, $5,000 from Weiner; third-party defendant also received $5,000 in compensatory damages for breach of contract and $1,000 compensatory damages for breach of fiduciary duty with punitive damages of $1,000 each from Biondi, Appleby, Cundey, Silverman, and Weiner.

**7.** Although *Hensley* and other cases cited in this opinion deal with fee awards under 42 U.S.C. § 1988, as the Supreme Court stated in *Hensley*, "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 461 U.S. at 433 n. 7, 103 S.Ct. 1933 (citation omitted). Accordingly, such fee awards are appropriate under 42 U.S.C. § 3613 as well.

**8.** Defendants also argue that third-party defendant waived her right to recover attorneys' fees by denying that she was seeking attorneys' fees as compensatory damages during trial. (Defs.' Memo. at 4.) Compensatory damages are separate from recovery of attorneys' fees under 42 U.S.C. § 3613 and third-party defendant's statement which defendants proffer as evidence of a waiver is irrelevant to the instant determination.

*Id.,* 461 U.S. at 435, 103 S.Ct. 1933. Especially in situations where a plaintiff obtains excellent results, "the fee award should not be reduced simply because the plaintiff failed to prevail in every contention raised in the law suit." *Id.*

The plaintiffs' claim for intentional infliction of emotional distress rests squarely on the same facts that supported their discrimination suit, namely, intentional discriminatory behavior. The factual commonalities underlying these suits render time spent on both claims virtually indivisible. Thus, the court finds that the failure of plaintiff's claim for intentional infliction of emotional distress does not warrant reducing the lodestar.

Plaintiffs' time sheets support their contention that any time spent on the promissory estoppel claim has been omitted from the fee application. Therefore, no further reduction on this score would be appropriate.

### 2. *Time spent on state claims*

■ Defendants argue that there should be no reimbursement for fees incurred to defend against the state law defamation and injurious falsehood claims which do not allow for attorneys' fees. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 67 n. 7, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); *New York City Bd. of Educ. v. Sears,* 83 A.D.2d 959, 443 N.Y.S.2d 23, 25 (App.Div.1981).

Prevailing over defendants' defamation claim required the examination and preparation of facts closely related to plaintiffs' case in chief. Defendants argued throughout the trial that they rejected plaintiffs' sublease application because they believed the plaintiffs to have wrongly accused them of using race as a factor in the approval process. Exposing this excuse as a pre-text for discrimination was an essential element in substantiating plaintiffs' discrimination contention and, therefore, prevents the lawsuit from being "viewed as a series of discrete claims." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. Thus, plaintiffs are entitled to recover fees for time spent defending against the defamation counter-claim.

■ Similarly, the injurious falsehood and defamation claims brought against third-party defendant are inextricably connected to her successful counter-suits. Defendants legal actions taken against Demou formed a substantial portion of her case for unlawful retaliation. Separating time spent on third-party defendant's defense and counter-suits would be impossible. *See United States Football League v. National Football League,* 887 F.2d 408, 414 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990) (To the extent that time was spent on alternative means of relief to central claim and on related claims, it is fully compensable). No reduction for time spent on state claims will be granted.

### 3. *Vague and ambiguous time sheet entries*

Defendants contend that the time entries submitted by plaintiffs and third-party defendant inadequately describe tasks performed, inadequately detail travel time, and improperly group together several activities under one time entry.

■ Defendants are correct that both sets of prevailing parties occasionally provide vague descriptions of their work and include multiple tasks encapsulated in a single time entry. The time records overall, however, afford sufficient opportunities to evaluate the reasonableness of time expended on each task. "Second Circuit decisions generally reduce fee awards only when there are 'numerous entries ... too vague under the *Carey* standard.'" *Guzman v. Bevona* 1996 WL 374144, at *4 (S.D.N.Y. July 3, 1996) (Patterson, J.). There will be no across-the-board reduction for lack of specificity.

■ Defendants, contention that plaintiffs' entries contain undisclosed travel time, thereby overcharging defendants since courts in this circuit customarily reimburse attorneys for travel time at fifty percent of their hourly rates, has merit. *Jennette v. City of New York,* 800 F.Supp. 1165, 1170 (S.D.N.Y. 1992) (Knapp, J.). Plaintiffs did not provide separate documentation for travel, but, based on Musoff's entries dated September 3, 1996 and March 28, 1997, four hours for travel time appears to have been charged. These hours will be reimbursed at fifty percent of

the hourly rates. According to third-party defendant's billing records which are uncontroverted, no hours for travel were billed. Accordingly, there is no basis for any reduction on this score as to third-party defendant.

### 4. *Excessive hours*

Defendants argue that inordinate amounts of time was spent on certain tasks and that the large number of attorneys (nine) working on third-party defendant's case led to a plethora of duplicative work and unnecessary billing.

■ Considering the length of the litigation and the nature of the services performed, the time billed by third-party defendant's nine-person legal team appears to be excessive. While allowances for duplicative efforts were made by discounting the hours of four lawyers, the five remaining lawyers have not sufficiently accounted for the size of their billings. Therefore, there will be a 10% across the board reduction in the hours charged.

■ Finally, defendants contend that plaintiffs and third-party defendant should not be allowed to recoup hours billed for "overzealous litigious tactics," including time third-party defendant spent on her summary judgment motion and time the plaintiffs spent on their motion to dismiss the defendants' counterclaim. This argument has no merit. The defendants themselves pursued an extensive and intense legal strategy throughout the course of trial including the instigation of counter-claims against plaintiffs and the initiation of law suits against third-party defendant. Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466.

### 5. *Duplicative tasks*

■ Defendants contend that plaintiffs and third-party defendant duplicated work by using more than one lawyer to complete various tasks such as preparing for and attending depositions and trial. While it is true that redundant work should not be billed, many tasks require or benefit from the attention of more than one attorney. Therefore, the presence and collaboration of multiple lawyers do not, by themselves, indicate needless duplication. The court has recognized that "having two attorneys research and participate in drafting a brief is a common practice and therefore not necessarily duplicative." *Equal Employment Opportunity Comm'n v. Local 638, Sheet Metal Worker's Int'l Ass'n*, No. 71 Civ. 2877(RLC), 1991 WL 278917, at *2 (S.D.N.Y. Dec.18, 1991) Furthermore, the Second Circuit has held that "prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist." *Carey*, 711 F.2d at 1146.

All three of plaintiffs' lawyers participated in the trial, and the third-party defendant made it a specific point not to charge in court hours by lawyers who did not contribute to the trial proceedings. Defendants themselves had several attorneys in the courtroom during trial which supports the court's prior observation that "[a]ttorneys seldom try cases alone; counsel for defendants certainly did not." *Bridges v. Eastman Kodak Company*, 1996 WL 47304, at *6 (S.D.N.Y. February 6, 1996) (Carter, J.), *aff'd*, 102 F.3d 56 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2453, 138 L.Ed.2d 211, 65 U.S.L.W. 3825 (U.S. June 16, 1997).

■ Attendance at depositions is a different matter. Time spent in depositions is far less adversarial and not nearly so crucial to the success of the case as time spent in trial. Thus, "[w]hile the court recognizes that assistance at depositions is often necessary, generally that assistance is offered by an associate at a much lower rate." *Carrero v. New York City Housing Authority*, 685 F.Supp. 904, 908 (S.D.N.Y.1988) (Sweet, J.), *rev'd in part on other grounds*, 890 F.2d 569 (2d Cir.1989).

Accordingly, at the depositions where plaintiffs and third-party defendant were represented separately by two attorneys, the junior attorney should bill at a reduced rate. Furthermore, the court finds the presence of three plaintiffs' attorneys' unnecessary during Caprara's deposition on March 11, 1997,

and will disallow the hours of Mark Smith during that deposition. The allowed rates for the additional attorneys at deposition are as follows:

| Attorney | Date | Deposition | Hours | Rate |
|---|---|---|---|---|
| Eric Richardson | 5/31/96 | Demou | 3.5 | $120 |
| | 6/11/96 | Appleby | 9 | $120 |
| | 6/13/96 | Appleby | 4 | $120 |
| | 2/24/97 | Silverman | 6 | $155 |
| | 2/27/97 | Biondi | 10.2 | $155 |
| | 3/19/97 | Cohen | 4 | $155 |
| Scott Musoff | 6/11/96 | Appleby | 8 | $135 |
| | 6/13/96 | Appleby | 5.0 | $135 |
| | 2/27/97 | Biondi | 3.0 | $175 |
| | 3/11/97 | Caprara | 1.10 | $175 |
| Mark Smith | 3/11/97 | Caprara | 6 | $ 0 |
| | 3/12/97 | Weiner | 5.3 | $140 |
| | 3/13/97 | Cundey | 4.2 | $140 |

■ Defendants further complain that substitution of plaintiff's lead counsel, David Diamond, with Joseph Sacca resulted in a duplication of effort during the time Sacca spent to familiarize himself with the case. The defendants rely on *Annis v. County of Westchester*, 939 F.Supp. 1115, (S.D.N.Y. 1996) (Conner, J.), in which the court reduced an attorney's billable hours to a "reasonable" amount of time in light of his need to familiarize himself with the case after replacing another attorney. However, the court in *Annis* reduced the new attorney's hours because the plaintiff made the decision to switch lawyers. In the present case, Diamond stepped down as lead counsel without any apparent influence from plaintiffs. Furthermore, the ruling in *Annis* recognized that, even if the second attorney had been involved in the litigation from its inception, "it would have been reasonable for him to spend some time reviewing the files in preparation for trial." *Id.*, at 939 F.Supp. at 1123. Sacca's hours spent on studying the case appear to be reasonable and no hours will be reduced for duplication of effort on Sacca's part.

### 6. *Inaccurate time entries*

■ Defendants list several inconsistent time entries in which an attorney recorded time conferring with another attorney or law clerk without a matching entry from the identified person. (Defs.' Mem. at 33.) Considering the hundreds of time entries made in this case, a few instances of inconsistent entries are not conclusive of widespread flaws in the billing records. No hours will be deducted for inaccurate time entries.[9]

### 7. *Non-compensable time*

■ Defendants argue that the opposing parties submitted records containing administrative functions and other tasks performed by attorneys that are not chargeable to defendants. In addition, defendants point out that the plaintiffs' fee application contained an unrelated time entry dated August 14, 1996, in which Musoff billed one-half hour for work on a different case.

■ Filing, delivery, service of papers and other similar administrative tasks are not usually considered recoverable expenditures of time for attorneys' fees. *Society for Good Will to Retarded Children v. Cuomo*, 574 F.Supp. 994, 999 (E.D.N.Y.1983), *vacated on other grounds*, 737 F.2d 1253 (2d Cir. 1984). Consequently, some time will be disallowed. Scott Musoff billed 3.75 hours on May 20, 1996 for the following: "Filed brief; edit letters; dep. prep." On February 24, 1997, Musoff billed 2.75 hours for the following: "Serve and file answer; confer with J. Sacca; Silverman dep.; meet with J.S.; M. Hertz and E. Richardson." Although portions of the 6.5 hours might be allowable, plaintiffs have failed to provide a specific enough breakdown for the court to determine what might be billed. Accordingly, the entire 6.5 hours will be subtracted from his total in addition to the half-hour that Musoff spent on the unrelated matter.

Likewise, several administrative tasks performed by Eric Richardson will be disallowed:

| | | |
|---|---|---|
| 3/28/96 | Prepare Civil Cover Sheet; teleconference with Diamond, conference with Hertz; research re: consolidation; revise letter to Stiefel & Cohen; prepare removal papers for filing and service. | 5.2 |
| 3/29/96 | Filing and service of removal papers; conference with Hertz; teleconference with Demou; Letter to Stiefel and Cohen; revise letter | 1.7 |
| 4/25/96 | Revise answers; conferences with Norman, Hertz, Demou; filing and service | 6.0 |
| 12/30/96 | Organize files; teleconference with Sacca, Musoff, Murphy re: discovery cutoff. | 1.4 |
| 3/5/97 | Organize files; conference with Jennifer Johnson; prepare for Vega. | 7.4 |

---

9. Defendants' also complain that David Diamond recorded his time entries in quarter hour intervals which led to inaccurate and excessive billing on his behalf due to rounding. The court does not agree. There is no evidence that David Diamond improperly billed hours.

## B. Hourly Rate

■ Plaintiffs request rates for David Diamond of $250 per hour for the period from December 6, 1995 through December 31, 1995 and of $265 after January 1, 1996; for Scott Musoff, rates of $190 per hour from January 19, 1996 through September 30, 1996, and $230 per hour after October 1, 1996; for Joseph Sacca, rates of $225 per hour from August 26, 1996 through September 30, 1996, and $255 after October 1, 1996; for Mark Smith, rate of $195 per hour. Plaintiffs also request rates of $55 to $125 per hour for paralegals. To support these requests, plaintiffs submitted evidence showing prevailing hourly rates in bankruptcy cases in 1996 for New York City law firms to be from $300 to $500 for partners, from $125 to $425 for associates, and from $60 to $160 for paralegals, depending on skill and experience level.

Third-party defendant requests rates for Michael Hertz in 1996 of $290 per hour and in 1997 of $320 per hour; for John Brennan, rate of $290 per hour; for Eric Richardson, rates of $175 per hour in 1996 and $210 per hour in 1997; for Lauren Krasnow, rate of $185 per hour; for Jennifer Johnson, rate of $155 per hour; and rates from $55 to $125 for paralegals, depending on skill and experience levels.

Third-party defendant submits surveys of major New York law firms from 1993 to 1996 that list rates charged to clients according to attorney experience level. These rates varied from $300 to $500 for partners, from $190 to $284 for associates, and from $35 to $120 for paralegals.

Plaintiffs have the burden of demonstrating the reasonableness of their hourly rate. The court has indicated that, ideally, evidence of the prevailing market rate should include: "affidavits from attorneys with similar qualifications stating the precise fees they have received for comparable work or stating the affiant's personal knowledge of specific rates charged by other lawyers for similar litigation, data about fees awarded in analogous cases, [and] evidence of the fee applicant's rates during the relevant time period." *Suarez v. Ward*, No. 88 Civ. 7169, 1993 WL 158462 at *2 (May 13, 1993, S.D.N.Y.) (Carter, J.) (citation omitted).

Defendants cite *Chambless v. Masters, Mates & Pilots Pension Plan*, No. 80 Civ. 4258, 1988 WL 80170 (S.D.N.Y. July 21, 1988) (Carter, J.) to bolster their case that the requested fees are exorbitant. In *Chambless*, the court held that plaintiff inadequately established reasonable attorneys' fees because he submitted an undifferentiated range of rates billed by large New York firms without explaining how the rates varied according to skill, type of litigation, size of firm, or services rendered. Furthermore, the court found that the "appropriate comparison for [plaintiff's counsel, a small firm] is not, as plaintiff appears to believe, to a large law firm, 'which because of increased overhead, charges higher rates,' but to a small or medium-sized firm." *Chambless*, 1988 WL 80170, at *10, (quoting *Huertas v. East River Housing Corp.*, 662 F.Supp. 282, 286 (S.D.N.Y. 1986) (Carter, J.), *vacated on other grounds*, 813 F.2d 580 (2d Cir.1987)).

■ Plaintiffs and third-party defendant have satisfied the *Chambless* requirements by providing documentation of the standard attorneys' rates for comparable legal services in the "relevant community," namely, the Southern District of New York. The approved list of fees in bankruptcy cases submitted by plaintiffs and the 1996 survey of New York law firm fees submitted by third-party defendant adequately detail a differentiated list of rates based on attorney skill level in firms of similar size to the prevailing parties' counsel.[10] The attorneys' rates requested by plaintiffs and third-party defendant represent an adoption of the standard rates used when billing any of their regular clients. "[T]he actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing com-

10. Counsel for plaintiffs, Skadden, Arps, Slate, Meagher & Flom ("Skadden"), is a large, international law firm with over 500 attorneys in New York City alone and 1,100 attorneys world-wide. Latham & Watkins ("Latham"), counsel for third-party defendant, employs 758 attorneys nationwide, including 157 attorneys in its New York office. Both Skadden and Latham represent a multitude of Fortune 500 companies, investment banks, and securities institutions.

munity rate." *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1326 (D.C.Cir.1982).

The size of plaintiffs' and third-party defendant's counsels' firms especially is pertinent to their fees. In *Burr*, the court held that non-profit civil rights attorneys were not entitled to the same rates charged by Cravath, Swain, & Moore because of the costs associated with Cravath's larger size.

> Plaintiff's attorneys' work in this case may well be at Cravath's level ... but this does not necessarily mean that plaintiff is entitled to Cravath rates. Cravath has much higher overhead than plaintiff's lawyers, including luxury office space, 24 hour staffing, and a host of other amenities, which is reflected in the rate charged per hour for plaintiff's lawyers, the appropriate comparison is to a high quality, small to mid-sized law firm in New York City.

748 F.Supp. at 102. *See also Williams v. Secretary of the Navy*, 853 F.Supp. 66, 71 (E.D.N.Y.1994) (small law firms not entitled to same hourly rates as large law firms due to higher overhead associated with large law firms). Conversely, when prevailing party's counsel is similarly situated in size and sophistication to large New York firms, that counsel is entitled to the concomitant rates of those firms. Thus, the requested rates are not unreasonable. *See e.g., Ragin v. Harry Macklowe Real Estate Co.*, 870 F.Supp. 510 (S.D.N.Y.1994) (in housing discrimination case, hourly rates of $275 and $300 for lead counsel); *Davis v. City of New Rochelle*, 156 F.R.D. 549 (S.D.N.Y.1994) (in voting rights case, hourly rate of $300 for lead counsel).

■ Defendants argue that the skill and experience levels of prevailing parties' counsel do not warrant the requested rates. Given the factual difficulty of proving intentional discrimination, the quality of lawyering involved, and the level of success achieved by the victors, this argument must fail.

According to plaintiffs' documentation, counsel for the plaintiffs—Joseph Sacca, Scott Musoff, and Mark Smith—each served clerkships for United States District Judges prior to joining Skadden and were familiarized with various civil rights cases pending before their respective judges. Sacca, a *cum* *laude* graduate of the Temple University School of Law where he was Managing Editor of the *Temple Law Review*, was admitted to the bar in 1994. Musoff graduated *magna cum laude* from New York University School of Law in 1994 where he was a member of Order of the Coif and a Senior Staff Editor of the Annual Survey of American Law. Musoff was admitted to the New York Bar in 1995. Smith graduated from New York University School of Law in 1995 and was admitted to the New York Bar in 1996. Smith was a member of the *New York University Environmental Law Journal*. David Diamond, a Harvard Law School graduate, was a fourth- and fifth-year associate during the time he worked on this case. Furthermore, each of these attorneys has litigated civil rights cases while at Skadden.

Representing third-party defendant, Michael Hertz is a partner at Latham with extensive civil rights trial experience. John Brennan, a 1989 *cum laude* graduate of the Catholic University Law School, has also participated in a prior civil rights case. Eric Richardson, a 1994 *cum laude* graduate of Cornell University Law School, has participated in two prior civil rights cases. Lauren Krasnow is a 1994 *cum laude* graduate of the University of Michigan Law School. She clerked for a United States District Judge, has participated in civil rights cases, and has written articles related to civil rights issues. Jennifer Johnson graduated *cum laude* from Boston College Law School where she actively worked on public interest and civil rights issues.

Plaintiffs' and third-party defendant's counsel are qualified to command the rates which they request, as evidenced by their educational backgrounds, their legal experience, and their level of success in the case. The United States Supreme Court has noted that " 'the most critical factor' in determining the reasonableness of a fee award is 'the degree of success obtained.' " *See Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1982)). Both plaintiffs' and third-party defendant's counsel won substantial damage awards, with the plaintiffs

achieving the highest award ever levied against a New York City Co-op.

The United States Supreme Court has stated that "judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil rights cases." *Hensley,* 461 U.S. at 447, 103 S.Ct. 1933. Plaintiffs and third-party defendant have provided sufficient information to persuade this court that their requested rates are commensurate with those that they would receive on the open market.

Defendants incorrectly conclude that plaintiffs and third-party defendant unfairly accessed their respective counsel's pro bono services because of their own economically privileged status. This is irrelevant in the context of a claim for attorneys' fees. *See e.g., Blum v. Stenson,* 465 U.S. 886, 894–95, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (the calculation of attorneys' fees should not vary depending on whether the successful party was represented by private counsel, an attorney serving pro bono or a non-profit legal services organization). Furthermore, as plaintiffs note, the daunting task of proving a housing discrimination suit may very well have precluded a smaller firm from assuming the risk of fighting an uphill battle at substantial cost and little assurance of victory. In any event, prevailing parties will not be penalized because they secured services of counsel of a large New York firm.

The following figures represent the lodestar fees awarded:

David Diamond

1996

| | | |
|---|---|---|
| 11.25 | hours | requested |
| 11.25 | hours | allowed |

| | | | |
|---|---|---|---|
| 11.25 | hours × $250/hour = | $ | 2,812.50 |

1997

| | | |
|---|---|---|
| 216.4 | hours | requested |
| 216.4 | hours | allowed |

| | | | |
|---|---|---|---|
| 216.4 | hours × $265 = | $ | 57,346.00 |

Scott Musoff

1/19/96–9/30/96

| | | |
|---|---|---|
| 214.55 | hours | requested |
| − 0.50 | hours | unrelated matter |
| − 1.00 | hours | 50% reduction in travel time |
| − 3.75 | hours | administrative tasks |
| 209.30 | hours | allowed |

| | | | |
|---|---|---|---|
| 196.30 | hours × $190/hr = | $ 37,297.00 | |
| 13.00 | hours × $135/hr = | $ 1,755.00 | (attendance at depositions billed at lower scale) |

10/1/96–5/31/97

| | | |
|---|---|---|
| 336.20 | hours | requested |
| − 1.00 | hours | 50% reduction in travel time |
| − 2.75 | hours | administrative tasks |
| 332.45 | hours | allowed |

| | | | |
|---|---|---|---|
| 328.35 | hours × $230/hr = | $ 75,520.50 | |
| 4.10 | hours × $175/hr = | $ 717.50 | (attendance at depositions billed at lower scale) |

Joseph Sacca

8/26/96–9/30/96

| | | |
|---|---|---|
| 67.10 | hours | requested |
| 67.10 | hours | allowed |

67.10 hours × \$225/hr = \$ 15,097.50

10/1/96–5/31/97

| | | |
|---|---|---|
| 551.30 | hours | requested |
| − 1.50 | hours | 50% reduction in travel time |
| 549.80 | hours | allowed |

549.80 hours × \$255/hr = \$140,199.00

Mark Smith

| | | |
|---|---|---|
| 331.10 | hours | requested |
| − 6.00 | hours | deposition |
| 325.10 | hours | allowed |

315.60 hours × \$195/hr = \$ 61,542.00
9.50 hours × \$140/hr = \$ 1,330.00 (attendance at depositions billed at lower scale)

Total Fee Award for Plaintiffs: \$393,617.00

### Counsel for Third–Party Defendant

Michael Hertz

1996

| | | |
|---|---|---|
| 71.00 | hours | requested |
| − 7.10 | hours | 10% reduction |
| 63.90 | hours | allowed |

63.9 hours × \$290/hr = \$ 18,531.00

1997

| | | |
|---|---|---|
| 47.20 | hours | requested |
| − 4.72 | hours | 10% reduction |
| 42.48 | hours | allowed |

42.48 hours × \$320/hr = \$ 13,593.60

John Brennan

| | | |
|---|---|---|
| 339.00 | hours | requested |
| −33.90 | hours | 10% reduction |
| 305.10 | hours | allowed |

305.10 × \$290/hr = \$ 88,479.00.

Eric Richardson

1996

| | | |
|---|---|---|
| 275.90 | hours | requested |
| −14.30 | hours | administrative tasks |
| −26.16 | hours | 10% reduction |
| 235.44 | hours | allowed |

218.94 hours × \$175/hr =     \$ 38,314.50
16.50 hours × \$120/hr =     \$  1,980.00 (attendance at depositions billed at a lower scale)

__1997__

612.90 hours    requested
7.40 hours    administrative tasks
−60.55 hours    10% reduction
544.95 hours    allowed

524.75 hours × \$210/hr =     \$110,197.50
20.20 hours × \$165/hr =     \$  3,333.00 (attendance at deposition billed at a lower scale)

__Lauren Krasnow__

182.80 hours    requested
−18.28 hours    10% reduction
164.52 hours    allowed

164.52 hours × \$185/hr =     \$ 30,436.20

__Jennifer Johnson__

347.40 hours    requested
−34.74 hours    10% reduction
312.66 hours    allowed

312.66 hours × \$155/hr =     \$ 48,462.30

Total Fee Award for Third-Party Defendant: \$353,328.90 [11]

---

### III. Costs and Disbursements

■ After reviewing the submitted documentation, the court finds that the rates charged by prevailing parties counsels for paraprofessional work are excessive and should be adjusted downwards by 20%. Plaintiffs' will be awarded \$28,028.44 for the paraprofessional staff and \$57,404.59 for out-of-pocket expenses. Third–Party Defendant will be awarded \$21,904.96 for the paraprofessional staff and \$31,828.91 for out-of-pocket expenses.

### IV. Conclusion

For the reasons set forth above, plaintiffs' motion for attorneys' fees and costs is granted to the extent of \$393,617.00 in fees and \$85,433.03 in disbursements, for a total award of \$479,050.03. Third-party defendant's motion for attorneys' fees and costs is granted to the extent of \$353,328.90 in fees and \$53,733.87 in disbursements for a total award of \$407,062.77. Plaintiffs and third-

**11.** The fact that third-party defendant's fee award is larger than the damages awarded to the plaintiff is irrelevant. The Second Circuit has stated:

[t]he reduction of a requested fee merely because the damages recovered was small is "error unless the size of the award is the result of the quality of representation," for "tying that award to the amount of damages would sub-

vert the statute's goal of opening the court to all who have meritorious civil rights claims." *DiFilippo v. Morizio,* 759 F.2d 231, 235 (2d Cir.1985) (internal quotation marks omitted). *See, e.g., City of Riverside v. Rivera,* 477 U.S. 561, 564–67[, 106 S.Ct. 2686, 91 L.Ed.2d 466] ... (1986) (approving fee award of \$245,456.25 after recovery of \$33,350 on claims of warrantless entry and excessive force).

party defendant are also entitled to recover their costs.

IT IS SO ORDERED.